IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TODD ANTHONY ANDRADE,

    Petitioner,                      Case No. 1:07-cv-00784 ALA (HC)

    vs.

JAMES YATES, WARDEN,

    Respondent.                     <u>ORDER</u>

_____/

    Petitioner is a state prisoner proceeding *pro se* with an application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a).  Before this Court are Petitioner's amended application for a writ of habeas corpus[1] (Doc. 18), Respondent's Answer (Doc. 28), and Petitioner's Traverse (Doc. 35).  For the reasons discussed below, Petitioner's application will be DENIED.

**I**

**A**

    On April 15, 2005, a Madera County Superior Court jury convicted Petitioner the following felony offenses:  (1) fleeing from a pursuing peace officer while in a motor vehicle, a

---

[1] Petitioner's amended application for a writ of habeas corpus will be referenced herein as: Petitioner's application for a writ of habeas corpus.

1

felony violation of Cal. Veh. Code § 2800.0(a); (2) resisting arrest by force or violence, in violation of Cal. Penal Code § 69; and, (3) assault with a deadly weapon or by force likely to cause great bodily injury on a peace officer, in violation of Cal. Penal Code § 245(c). Petitioner was found to have two prior serious felony convictions, in violation of Cal. Penal Code §§ 667(a)(1) and (b)(1). Petitioner was sentenced to serve an indeterminate sentence of thirty-one years to life in state prison for these offenses.[2]

## B

Petitioner filed a direct appeal of the judgment and conviction before the California Court of Appeal for the Fifth Appellate District. In its decision affirming the judgment, the Court of Appeal summarized the relevant facts as follows:

> On the afternoon of April 12, 2004, Madera County Deputy Sheriff Chris Swanson was on patrol in his marked sedan. At 3:00 p.m. Deputy Swanson attempted to pull over [Petitioner] to make a traffic stop on Road 426. Swanson initially turned on the rotating blue and red overhead lights on his patrol vehicle. [Petitioner] did not pull over and Deputy Swanson then activated the siren. [Petitioner] ignored these signals and continued driving his 1991 Ford Mustang on Road 426. When [Petitioner] made a left turn, Swanson followed him onto Spook Lane. The latter was a narrow, winding mountainous roadway with no center line.
>
> As Deputy Swanson continued his pursuit, he noted that [Petitioner] was driving at 35 miles per hour, too fast for road conditions. At one point, smoke emanated from the tires of the Mustang when [Petitioner] locked the brakes. [Petitioner] eventually made a right turn into a driveway off Spook Lane. He continued up the bumpy dirt driveway and then "rammed through a chain-link gate." [Petitioner] drove to the front yard of the house. "[T]here was enough room out front for him to try to turn back to the right and circle back out the driveway." [Petitioner] then applied power as he "tried" to make a turn back out to the right, and Swanson believed [Petitioner] "was going to run from that location." Swanson had stopped his patrol car on the right side of the parking area at the residence. As [Petitioner] turned around in the driveway and applied power, he went into a

---

[2] Petitioner was originally sentence to fifty-six years to life in state prison. The California Court of Appeal for the Fifth Appellate District, modified the sentence to thirty-one years to life in state prison. *People v. Andrade*, No. F048471, 2007 WL 257963 at *2 (Cal. Ct. App. Jan. 31, 2007); Lod. Doc. 5.

> "power slide," "gravel spitting out ... the rear of his car" and collided the front passenger side of his Mustang into the front passenger side of the patrol vehicle.
>
> Deputy Swanson got out of his patrol car, pointed his service weapon at [Petitioner], and ordered [Petitioner] to turn off the engine of the Mustang. [Petitioner] refused to comply, revved the motor of the Mustang, and attempted to put the car into gear. As he did so, smoke emanated from the engine compartment and [Petitioner's] sole passenger, Angela Coy, got out of the vehicle. Deputy Swanson extended his left hand and attempted to grab [Petitioner's] left arm. When Swanson was unable to grab [Petitioner], he placed his service firearm on the roof of the Mustang, used both of his hands, and attempted to pull [Petitioner] from the vehicle.
>
> Deputy Swanson's efforts to remove [Petitioner] from the Mustang were unsuccessful. He next placed his firearm in the holster and noticed that [Petitioner] was still attempting to put the Mustang into gear. Swanson then struck [Petitioner] in the face and head with his right fist in an effort to stop [Petitioner] from fleeing. After Deputy Swanson hit [Petitioner] between five and seven times, [Petitioner] leaned his body over, put his feet up against the driver's side door, and attempted to push off from the driver's door. In doing so, [Petitioner] sought to escape through the open passenger door. When Swanson grabbed one of his feet, [Petitioner] said, "I give up." Deputy Swanson was then able to pull [Petitioner] out of the Mustang and handcuff him. Swanson placed [Petitioner] under arrest, searched the passenger compartment of the Mustang, and found a billy club between the driver's seat and the driver's door.

*Andrade*, 2007 WL 257963 at *2 (footnotes omitted).

### C

On January 31, 2007, the California Court of Appeal affirmed Petitioner's conviction and modified his sentence. On April 11, 2007, the California Supreme Court summarily denied Petitioner's petition for review. Respondent has admitted that Petitioner exhausted his federal constitutional claims in his direct appeal to the California Supreme Court.[3]

---

[3] Petitioner did not file a petition for a writ of habeas corpus in the state court. Petitioner originally filed an application for a writ of habeas corpus in this Court on May 29, 2007. (Doc. 1) It alleged three grounds for relief: two claims, which had been exhausted in Petitioner's direct appeal to the California Supreme Court, and one unexhausted claim. On September 12, 2007,

Petitioner timely filed the instant application for a writ of habeas corpus pursuant to § 2254(a) on November 16, 2007.

**II**

Petitioner has set forth two federal constitutional claims in his application for a writ of habeas corpus. Congress has limited the power of a federal court to grant habeas corpus relief in § 2254(d). It provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Pursuant to § 2254(d)(1), "[a] state court decision is 'contrary to'. . . clearly established [United States Supreme Court] precedents if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing and quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant habeas corpus relief if the state court identified the correct governing legal principle from Supreme Court precedent, but unreasonably applied that principle to the facts of the case at bar.

---

Respondent filed a motion to dismiss the petition for failure to exhaust state court remedies. (Doc. 10) On November 6, 2007, this Court ordered Petitioner to amend his petition omitting the unexhausted claim. (Doc. 17) On November 16, 2007, Petitioner filed the instant first amended petition omitting the unexhausted claim. (Doc. 18).

*Williams*, 529 U.S. at 413.  A federal habeas court, however, "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous'").

A federal court must evaluate a claim pursuant to § 2254(a) by reviewing the last reasoned state court decision. *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the Court of Appeal's order denying Petitioner's direct appeal is the last reasoned opinion for both of Petitioner's claims.  Therefore, this Court must evaluate the Court of Appeal's decision.

## A

Petitioner contends that he received ineffective assistance of counsel at the guilt phase of his trial, in violation of his "state and federal constitutional right[s]." (Pet. at 5.)  He claims that his trial counsel "failed to object when the prosecutor asked Deputy Swanson whether he believed that [Petitioner] hit his patrol car purposefully." *Id.*  Petitioner argues this "lay opinion . . . was based on speculation and conjecture, was inadmissible lay opinion evidence, and was irrelevant." *Id.*

Petitioner's entitlement to habeas relief on this ground "turns on showing that the state court's resolution of his claim of ineffective assistance of counsel" under *Strickland v. Washington*, 466 U.S. 668 (1984), "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting 28 U.S.C. § 2254(d)(1)).  "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice." *Id.*  "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (citation omitted).

In addressing Petitioner's ineffective assistance of counsel claim, the California Court of Appeal held that

> [it] must be rejected for several reasons. First, a witness cannot competently testify to facts of which he or she has no personal knowledge. "Personal knowledge" means a present recollection of an impression derived from the exercise of the witness's own senses. (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 731; Evid.Code, § 702.) In the instant case, Deputy Swanson was a percipient witness to [Petitioner's] operation of the Mustang and could competently testify to an impression derived from the exercise of his own senses.
>
> Second, Deputy Swanson's testimony that [Petitioner] "intentionally" hit his service vehicle was essentially irrelevant to the charged offense of assault. Generally speaking, an assault is a general intent crime and is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen.Code, § 240.) To be guilty of an assault, a defendant must be aware of facts that would lead a reasonable person to realize a battery would directly, naturally, and probably result from his or her act or conduct. The defendant may not be convicted based on facts he or she did not know but should have known. However, the defendant need not be subjectively aware of the risk a battery might occur. (*People v. Williams* (2001) 26 Cal.4th at 779, 784-788.) Here, the act underlying the alleged assault was not the intentional driving of [Petitioner's] vehicle into the patrol vehicle. Rather, . . . the underlying act was [Petitioner's] conduct in accelerating and spinning the Mustang so as to make a fast turn and depart from the scene. In view of these standards, Deputy Swanson's testimony about [Petitioner's] so-called intentional or purposeful conduct had no tendency in reason to prove or disprove a disputed fact of consequence to the determination of the action. (Evid.Code, § 210.)
>
> Third, a review of record reveals that defense counsel focused his trial strategy on an alternate theory for the collision of the two vehicles. . . . [I]t is probable defense counsel reasonably elected not to draw attention to the prosecutor's question by interposing an objection. Instead, defense counsel focused his insight and energies on eliciting the necessary facts to show that his client unintentionally collided with Deputy Swanson's patrol car. Reviewing courts will reverse convictions on the ground of inadequate counsel only if the

record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) Counsel's methodical presentation at trial clearly evidenced a "rational tactical purpose."

Finally, [Petitioner] contends he was prejudiced by his trial counsel's failure to object. As noted above, a reviewing court will find prejudice when a defendant demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*People v. Gurule*, *supra*, 28 Cal.4th at pp. 610-611.)

Here, the record showed that [Petitioner] evaded Deputy Swanson by leading him on a chase through winding, mountainous residential areas. The chase took place at speeds that Deputy Swanson deemed unsafe for the terrain. [Petitioner] broke through a private fence, reached a dead end on a residential parcel, initiated a power slide with his vehicle, and collided with Deputy Swanson's vehicle while attempting to go back the other way on the parcel. Although Swanson characterized the collision as "head-on," he qualified that statement in numerous respects. Swanson acknowledged he had parked his official vehicle on the right-hand side of a parking area on the residential parcel. Swanson further conceded "[t]he front of [Petitioner's] vehicle hit my passenger side front of the vehicle." Photographs admitted into evidence showed that each of the two vehicles respectively made contact at the front corner of the passenger side, in the vicinity of the headlamps. Swanson acknowledged there was "a trailer at the top of the driveway" and "there was enough room out front for [Petitioner] to try to turn back to the right and circle back out the driveway." In addition, Swanson believed that "Mr. Andrade was attempting to flee, and, yes, the power slide caused the accident." He also said that after the power slide "[t]he defendant was driving his vehicle attempting to evade."

In view of these facts and circumstances-particularly the numerous qualifications and clarifications in the entirety of Deputy Swanson's testimony-it is not reasonably probabl[e] a result more favorable to [Petitioner] would have occurred had defense counsel interposed an objection to the prosecutor's question at trial or relatively mild statement during closing argument. Reversal for alleged ineffective assistance of trial counsel is not required.

*Andrade*, 2007 WL 257963 at *4-9 (footnotes omitted).

The Court of Appeal correctly explained that Petitioner failed to show prejudice because

7

he had not demonstrated that, but for his trial counsel's allegedly unreasonable performance, there was a reasonable probability that the outcome of the case would have been different. *Smith*, 539 U.S. at 534. Accordingly, this Court concludes that Petitioner has not established that the Court of Appeal's decision was based on an erroneous application of *Strickland*, or other clearly established federal law as determined by the United States Supreme Court, or that the decision was objectively unreasonable. Petitioner is not entitled to habeas relief on this ground.

**B**

Petitioner also claims that his Sixth and Fourteenth Amendment rights were violated by the trial court when it imposed a sentence based on his prior 1982 juvenile adjudication. Specifically, Petitioner argues that

> [he] was sentenced to the most severe sanctions possible (56 yrs. to life) under the Three Strikes Law based, in part, upon his 1982 juvenile adjudication. [Petitioner] contends that the use of a prior juvenile adjudication to enhance an adult criminal sentence is unconstitutional . . . since [Petitioner] was not afforded the opportunity to have a jury determine the truth of the underlying allegations charged against him as a juvenile[.]

(Pet. at 5.)

A threshold matter when addressing a claim raised in an application for a writ of habeas corpus, pursuant to § 2254(a), is whether there is "clearly established Federal law, as determined by the Supreme Court of the United States" governing that claim. §2254(d)(1); *see Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) ("[a] necessary condition for federal habeas relief . . . is that the state court's decision be 'contrary to, or involv[e] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" (citing § 2254(d)(1)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The United States Supreme Court has not determined the constitutionality of using a juvenile adjudication to enhance a sentence beyond the statutory prescribed maximum. *See Boyd v. Newland*, 467 F.3d 1139, 1151-52 (9th Cir. 2006) (holding that although the Ninth Circuit does "not recognize nonjury juvenile adjudications as 'convictions' falling within the *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]

exception," there is an "absence of explicit direction from the Supreme Court" and therefore the claim is noncognizable).

### Conclusion

For the reasons set forth above, the decision of the California Court of Appeal was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," and did not result in "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Accordingly, IT IS HEREBY ORDERED that Petitioner's application for habeas corpus relief is DENIED.  The clerk is DIRECTED to enter judgment and close the case.

/////

DATED: January 6, 2009

                                       /s/ Arthur L. Alarcón
                                       UNITED STATES CIRCUIT JUDGE
                                       Sitting by Designation